## WICKHAM & BURTON COAL CO. v. EVANS COAL CO.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1922.)

No. 2953.

Sales ☞79—Buyer of coal held to have right to change destination of shipments.

Under a contract for the sale and purchase of 100 cars of coal, to be delivered f. o. b. at the mine, "destination where ordered," the destination of the coal was a ,matter immaterial to the seller, and where it claimed that by reason of a car embargo it was unable to ship to a destination ordered, because off the line of railroad on which its mine was located, the buyer *held* to have the right to designate another point. of destination on such line and not affected by the embargo.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action at law by the Evans Coal Company against the Wickham & Burton Coal Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Frank Crozier, of Chicago, Ill., for plaintiff in error.

Francis M. Lowes, of Chicago, Ill., for defendant in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Defendant sold plaintiff 100 cars of coal, Carterville 2-inch screenings, the failure to deliver which resulted in this action. A verdict and judgment for plaintiff followed.

Both parties were jobbers, defendant selling the output of a mine in the Carterville district located on the Illinois Central Railroad. Carterville coal comes from Williamson county, in which there are located some 40 or 50 mines, served by three different railroads. The contract is evidenced by four communications. The first, from the plaintiff, made inquiry for defendant's best price, which elicited the following reply:

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"We are now in a position to accept an order for some of our Carterville 2-inch screenings for shipment at the rate of one or two cars per day for an order of 100 cars at $1 per ton mines."

To this offer plaintiff replied:

"Accept offer 100 cars Carterville screenings $1 mine."

On the same day plaintiff sent a written order, confirming telegram, but before it was received defendant wrote:

"Your wire, 'Accepting offer one hundred cars Carterville 2-inch screenings,' received, and we were about to book your order when we discovered that the rate from our two mines, both being local to the I. C., does not apply to Ft. Wayne. In the intervening time this afternoon we have been trying to trade some of our screenings with some of our friends on the Missouri Pacific, but haven't succeeded in doing so. We hope to be able to wire you to-morrow morning that the order is taken care of."

Whereupon plaintiff sent defendant this wire:

"Yours 18th Ship Screenings Grand Rapids, Michigan."

To which defendant replied:

"Order booked. Will ship same to Grand Rapids."

Confirming this wire, defendant wrote plaintiff:

"This acknowledges receipt and acceptance of your order for 100 cars of screenings coal, for shipment on or about one or two per day consigned to yourselves at Grand Rapids, Mich., of price of $1.00 per net ton f. o. b. mines shipping point."

Shortly after this contract was negotiated, the various railroads operating in and around Chicago announced a rule the effect of which was to embargo shipments beyond the lines upon which the shipment originated; that is to say, the Illinois Central Railroad would not accept shipment of freight in Illinois Central cars to go beyond the Illinois Central lines. In other words, to ship Carterville coal to Michigan required the presence of a foreign car at defendant's mine. Defendant offered to show that no such foreign car was obtainable by the Illinois Central Railroad, and therefore it was unable to ship the coal to Grand Rapids. When this rule was made known to plaintiff, it wrote defendant, October 28th:

"Your favor of October 27th received and carefully noted. We cannot permit you to cancel our order No. 4007 with you for 100 cars of Illinois 2-inch screenings, as we have not more than half this coal sold on basis of this order and must make delivery. We respectfully refer you to your letter of October 17th in which you advised 'we are now in position to accept an order' for this coal 'for shipment at the rate of one or two cars per day, or an order of 100 cars.' On the strength of this letter we mailed you our order No. 4007 on October 18th for 100 cars, shipment starting at once at the rate of one or two cars daily, and you accepted this order on October 19th.

"We have the matter of embargo on shipments off the I. C. R. R. to Michigan up with the I. C. C. through our attorneys and believe we will get this straightened out very shortly. In the meantime, you can surely get some foreign cars to apply on our order and we shall expect you to start shipments at once (payment for same to be made on cash basis) or suffer the consequences."

"Kindly arrange to mail us car numbers promptly and let us have an acknowledgment of this letter."

To this letter defendant promptly replied:

"Very sorry indeed that the embargo placed by the Illinois Central prevented our shipping your coal as ordered. We were therefore compelled to cancel same, and hope that some time in the future we may be able to serve you."

Plaintiff thereupon replied:

"We are willing to enable you to comply with your contract to accept shipments of this coal in Chicago."

Defendant gives as reasons for failure to make shipment: (a) It could not get cars to make shipment from its mines located on the Illinois Central to a point in Michigan; (b) plaintiff had no right to change the point of destination from Grand Rapids, Mich., to Chicago, Ill., a point to which defendant could have made shipment.

Plaintiff insists that it not only had the right to name Chicago as the point of destination, and did so to overcome defendant's objection that it could not get cars, but it further contends that the coal purchased was Carterville coal produced in Williamson county, in which there were some 40 mines served by three different railroads, and defendant failed to show on the trial that it could not have shipped the coal to Michigan from one of the many mines on one of the three different railroads. Whether the parties contracted for Carterville coal mined from any of the Williamson county mines, or whether the parties understood that defendant was selling Carterville coal mined at a mine located at Cambria in the Carterville district, we need not determine.

We are satisfied that plaintiff had a right to change the point of destination from Grand Rapids, Mich., to Chicago, Ill., in order to make possible defendant's compliance with its own construction of the contract respecting mines from which the coal was to be taken. Not only did defendant by its letters and wires clearly indicate that the place of destination was an unimportant factor, so far as it was concerned, but the order itself shows clearly and indisputably that destination was a matter of interest to plaintiff alone. The order read, *"destination where ordered."* Later in the same order, under the subhead "Remarks," the following appeared, *"Start* shipment to us, Ft. Wayne." Later, when it was found impossible to ship to Ft. Wayne, plaintiff gave shipping directions to Grand Rapids, Mich., and this change in destination was acquiesced in by defendant.

The original proposal of defendant confirms this conclusion. Its offer to plaintiff was to accept an order for 100 cars of Carterville screenings for shipment at the rate of one or two cars per day at $1 per ton mine. It was offering to sell coal at the mines at a net price at the mines. The gross amount and the per day shipments only were designated. The destination was a matter for the purchaser to determine.

It is urged, however, by defendant that, because the wire changing the point of destination from Ft. Wayne to Grand Rapids did not contain the word "start," the place of destination was definitely and irrevocably fixed at Grand Rapids. Such a deduction would do violence to the theretofore clearly expressed intention of the parties, and at the

same time violate the rule of construction requiring us to give effect. if possible, to each provision of the contract. The original order and acceptance spelled the contract which fixed the rights of the parties. That order gave to plaintiff the right *to name and to change* the point of destination. Because the plaintiff did not again reserve the right to substitute another point when making his first change affords no reason for denying to him what was specifically provided for his benefit in the original order.

Other assignments of error require no special discussion. The verdict was amply supported by the evidence. Concluding, as we do, that the parties intended to, and did, contract, leaving the point of destination open, and to be determined by plaintiff, the purchaser, we are not called upon to determine the effect of a change in the point of destination of a shipment, such as Illinois coal, where no damage or threatened injury to the seller by virtue of such change is disclosed.

The judgment is affirmed.